**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **NAGIB YOUSIF NAGIB, A75-275-620,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **3:06-CV-0294-G** |
| | ) | **ECF** |
| **ALBERTO GONZALES, et al.,** | ) | |
| **Respondents.** | ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, this cause has been referred to the United States Magistrate Judge. The findings, conclusions and recommendation of the Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS:

Type Case: This is a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, filed by a detainee of the Bureau of Immigration and Customs Enforcement (ICE) who has been ordered removed.

Parties: Petitioner is presently confined at the Rolling Plains Detention Center in Haskell, Texas. Respondents are Alberton Gonzales, Attorney General of the United States, and Michael Chertoff, Secretary of the Department of Homeland Security. The Court issued process in this case.

Procedural History: Petitioner, a native and citizen of Sudan, entered the United States as a visitor in 1983. (Respondent's Exh. 1). In 1996, he applied for adjustment of status to that of permanent resident on the basis of his marriage to a United States Citizen. Within a few months

of that application, he applied for advance parole to travel to Sudan, which the former Immigration and Naturalization Service (INS) granted.[1] On April 4, 2001, the INS denied his application for adjustment of status in light of his divorce in 1998. The next day, the INS arrested Petitioner and placed him in removal proceeding as an arriving alien who was inadmissible as a result of a marijuana conviction on August 5, 1987, in County Criminal Court #6, and the lack of a valid entry document. (Id. Exh. 7). On April 17, 2001, Petitioner was released from INS custody, having posted an immigration court appearance bond. (Id. Exh. 10). Petitioner then fled to Canada. (Petition (Pet.) at 2). On November 1, 2002, an immigration judge ordered Petitioner removed *in absentia*. (Respondent's Exh. 11).[2]

On June 10, 2004, a United States Customs and Border Protection (CBP) officer arrested Petitioner as he applied for admission to the United States in Buffalo, New York. (Id. Exh. 13). Having determined that he had outstanding arrest warrants from Tarrant County, Petitioner was paroled into the United States and extradited to Texas. (Id. Exh. 14). After the dismissal of the Tarrant County charges, Petitioner was transferred to CBP's custody on September 24, 2004, and ICE placed him in removal proceedings as an arriving alien who was inadmissible. (Id. Exh. 14 and 15). On January 14, 2005, an immigration judge ordered Petitioner removed to Canada, or alternatively, to Sudan. (Id. Exh. 16). Petitioner did not appeal. As a result, the removal order

---

[1] On September 9, 1996, his attorney informed the INS that Petitioner had traveled to Sudan pursuant to the advance parole and that he would return on September 12, 1996. (Respondent's Exh. 5). In his reply, Plaintiff contends that he traveled to the Bahamas, instead of Sudan in mid-1996, and that his attorney should have a copy of his "Advance Parole paper." (Petitioner's Reply at 1). The Court need not determine, for purposes of this recommendation, whether Petitioner traveled to the Bahamas or Sudan.

[2] Contrary to Petitioner's assertion the immigration judge did not grant him a voluntary departure which permitted him to move to Canada. (Pet. at 2).

became administratively final thirty days thereafter. Although Petitioner was temporarily released from custody on an order of supervision, he has been in ICE's custody since August 4, 2005.

On August 5, 2005, ICE formally requested travel documents on behalf of Petitioner from the Sudanese Embassy in Washington, D.C. (Respondent's Exh. 19). Petitioner's custody status was subsequently reviewed by ICE, which issued a written decision to continue Petitioner's custody on November 14, 2005. (Id. Exh. 20). On November 15, 2005, December 15, 2005, January 25, 2006, and March 3, 2006, the Sudanese Embassy advised Ms. Aida Henfling, Petitioner's deportation officer, that his travel document request was still pending. (Id. Exh. 21 at 3).

In the present action, filed on February 15, 2006, Petitioner argues that his detention pending removal exceeds the reasonable period of detention set out in Zadvydas v. Davis, 533 U.S. 678 (2001).

In response to this court's order to show cause, Respondent filed a response to which Petitioner filed a reply.

Findings and Conclusions: Once an alien is ordered removed, the Immigration and Nationality Act (INA) states that the Attorney General is obligated to effect the removal within 90 days. 8 U.S.C § 1231(a)(1)(A). After an order of removal becomes final and during the 90-day removal period, aliens must be held in custody. 8 U.S.C § 1231(a)(2). An alien may be detained beyond the 90 day period if he/she is inadmissible (under 8 U.S.C. § 1182), removable (under certain provisions of 8 U.S.C. § 1227), or has been determined to be a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the United States Supreme Court held that detention under § 1231(a)(6) may not continue indefinitely. Rather, the Court concluded that six months (from the date the order of removal becomes final) is a presumptively reasonable period of detention to secure an alien's removal from the United States. Id., at 700-701. The Court held, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. “After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.” Id. at 701. The Supreme Court emphasized that the six-month presumption does not mean that every alien not removed must be released after six months. Id. “To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.” Id.

In Clark v. Martinez, 543 U.S. 371 (2005), the Supreme Court held that the construction of 8 U.S.C. § 1231(a)(6) and the six-month presumptive detention period adopted in Zadvydas applies in cases of inadmissible aliens, such as the one presently at issue.

Petitioner cannot make the necessary showings to be entitled to relief under Zadvydas and Clark. Even though, Petitioner waited to file the instant action until after the six-month presumptive period had expired, he has not alleged sufficient evidence to establish “that there is no significant likelihood of removal in the reasonably foreseeable future.” Zadvydas, 533 U.S. at 701. He merely relies on the fact that he “has complied in all aspects to affect [sic] his removal.” (Pet’s Reply at 14). Insofar as Petitioner relies on the bare fact that the Sudanese Embassy has not yet issued any travel documents for him despite the efforts of ICE to secure

them, his allegations are insufficient to demonstrate a significant unlikelihood of his removal in the reasonably foreseeable future. Petitioner has alleged no institutional barrier to the repatriation of aliens to Sudan. Indeed it appears from Ms. Henfling's affidavit, that the Sudanese government has in the past issued travel documents to Sudanese citizens, and that a decision on Petitioner's travel documents is still pending. (Respondent's Exh. 21 at 3).

Moreover, Petitioner's situation is in marked contrast to that of Kim Ho Ma and Kestutis Zadvydas, the aliens whose cases were considered in Zadvydas, and the Cuban Nationals who came to the United States as part of the Mariel Boat Lift, whose cases were considered in Clark. Ma was from Cambodia, a country with which the United States has no repatriation agreement. As a result there was virtually no hope of repatriating Ma back to his native land. Zadvydas, 533 U.S. at 686. Likewise Zadvydas, having been born in a refugee camp, was literally a man without a country and, therefore, was an individual whom no other nation would ever accept, no matter the efforts of the INS. Zadvydas, 533 U.S. at 684. In Clark, the government conceded that it no longer engaged in repatriation negotiations with Cuba. Clark, 543 U.S. at 386. Similar facts do not exist in this case.

In addition to failing to show an institutional barrier, Petitioner cannot show any particular individual barriers to his repatriation to Sudan. The lack of visible progress since ICE requested travel documents from the Sudanese Consulate on August 5, 2005, and last contacted the Sudanese Embassy telephonically on March 3, 2006, does not in and of itself meet his burden of showing that there is no significant likelihood of removal. Fahim v. Ashcroft, 227 F.Supp.2d 1359, 1366 (N.D. GA. 2002) (mere fact that Egyptian government has taken its time in responding to the INS request for travel documents does not mean that it will not do so in the

future).

Petitioner has failed to produce any facts indicating that ICE is incapable of executing his removal to Sudan in the near future and that his detention will be of an indefinite duration. See Gonzalez v. Bureau of Immigration and Customs Enforcement, 2004 WL 839654 (N.D. Tex. Apr. 20, 2004) (conclusory allegations that government was not diligently attempting to effect his removal were insufficient to meet his burden of proof). Accordingly, the Court finds no violation of Petitioner's constitutional rights with respect to his continued detention at the present time. Cf. Gui v. Ridge, 2004 WL 1920719 (M.D. Pa. Aug. 13, 2004) (meager efforts on the part of ICE to effect petitioner's removal to China, with no evidence of any attempts to secure travel documents being made in almost one year justified finding that petitioner had carried his initial burden of showing that there was no significant likelihood of his removal in the reasonably foreseeable future); Rajigah v. Conway, 268 F.Supp.2d 159 (E.D. N.Y. Jun 12, 2003) (letter from Guyanese Ambassador stating that travel document would not be issued because of pending judicial proceedings and because of inability to receive adequate medical treatment for eye disease in Guyana was sufficient for Petitioner to satisfy his burden of proving that there was no significant likelihood of his removal in the reasonably foreseeable future).

The petition for writ of habeas corpus should be dismissed without prejudice to the right to file a new petition if circumstances change. Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002); Apau v. Ashcroft, 2003 WL 21801154, at 3 (N.D. Tex. 2003).

RECOMMENDATION:

For the foregoing reasons, it is recommended that the District Court dismiss the petition for writ of habeas corpus without prejudice to it being reasserted if circumstances change.

A copy of this recommendation will be transmitted to Petitioner and counsel for Respondent.

Signed this 9th day of May, 2006.

Wm. F. Sanderson, Jr.

WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten days after being served with a copy of this recommendation. Pursuant to Douglass v. United Serv. Auto Assn., 79 F.3d 1415 (5th Cir. 1996)(*en banc*) a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten day period may bar a *de novo* determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.